No. 12744

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

MEMRY ANN SVENNUNGSEN,

                Plaintiff and Respondent,

-vs-

MARK WILLIAM SVENNUNGSEN,

                Defendant and Appellant.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable Robert Keller, Judge presiding.

Counsel of Record:

    For Appellant:

        Daley and Sherlock, Kalispell, Montana
        Joseph F. Daley argued, Kalispell, Montana

    For Respondent:

        H. James Oleson argued, Kalispell, Montana
        Frank B. Morrison, Jr. Whitefish, Montana

---

                Submitted: September 12, 1974

                Decided: OCT 8 1974

Filed: OCT 8 1974

Thomas J. Kearney
                        Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from an order of the district court of the eleventh judicial district for the County of Flathead modifying a divorce decree as to custody of a child.

Mark William Svennungsen (hereinafter referred to as appellant) married Memry Ann Svennungsen (hereinafter referred to as respondent) on August 19, 1967. Their one child, Derek, was born January 6, 1971. Appellant is a doctor of optometry and has practiced in Whitefish since September, 1967. Prior to the parties' divorce, respondent had worked as a cocktail waitress and as a calculator on the horse racing circuit. In July, 1972, respondent left Derek with appellant and she moved to Missoula where she rented an apartment. She worked as a waitress at a restaurant and worked at horse races in Missoula and Hamilton. She testified that she left her husband and child because "I had to see if I could do it on my own." She occasionally returned to Whitefish in order to visit her son.

In the fall of 1972, appellant and respondent agreed to get a divorce. They contacted a family friend and attorney, Frank Morrison, to obtain a divorce. Morrison testified that he was counsel for respondent in the divorce action. A separation, custody and property settlement agreement, prepared in October, was signed by the parties in December, 1972. The Agreement provided that appellant was to have custody of Derek with respondent having a right of reasonable visitation.

On January 31, 1973, respondent was granted a divorce and custody of Derek was given to appellant. Mr. Morrison, at the hearing on the petition to modify, testified:

"Q. * * * When you got into court, did the Judge or did Memry or yourself make specific mention of custody of Derek, the minor child? A. Well, Memry testified that she had read the Agreement and approved it, and that is the only reference to the subject.

- 2 -

"Q. Did she speak specifically, either in response to the questions put to her by counsel or the judge with regard to custody of Derek? A. It seems to me that the Judge asked her about it, but I am not sure exactly what the conversation was."

From July of 1972 until February 19, 1974, Derek was in the custody of appellant except on several occasions when respondent would take Derek out of town. After the divorce, respondent took care of Derek during the day while appellant was working. This arrangement was terminated several months after the divorce and Derek was placed with a babysitter during the day. Appellant remarried on December 7, 1973. His present wife has two children, ages two and four.

On December 28, 1973, respondent petitioned the district court to modify the custody portion of the divorce decree to have custody of Derek changed from appellant to respondent. After a hearing on January 9, 1974, the Court, sitting without a jury, changed custody from appellant to respondent. In its findings of fact the district court found:

"7. That the question of the custody of this child, in terms of its best interests, was never submitted to a Court for litigation, nor litigated, until this hearing."

No finding was made as to whether there had been a substantial change of circumstances since the divorce.

Appellant moved to amend the court's findings and order on March 4, 1974. On April 3, 1974, his motion was denied. From the order granting modification of the custody portion of the divorce decree and the denial of his motion to amend, appellant appeals.

The primary issue raised in this appeal is whether the respondent, in order to change custody from appellant to respondent, must make a showing of a "substantial change of circumstances" where the custody issue was not contested in an adversary hearing in the initial divorce action. We answer in the affirmative.

- 3 -

Subsidiary issues and further facts will be developed as needed in the course of this opinion. We shall set up the respondent's position first to properly frame the issue.

Respondent maintains that unless the issue of child custody has actually been "litigated" a Montana court is not in fact precluded from looking to the facts that existed at the time of the original decree, litigating said issue and issuing a judgment thereon. We recognize that a sizable minority of jurisdictions would accept the proposition propounded by respondent, but as will appear hereinafter, we reject it.

In Stewart v. Stewart, 86 Idaho 108, 383 P.2d 617, the Supreme Court of Idaho stated:

> " * * * Where facts, affecting their welfare,
> existing at the time of the divorce or award-
> ing custody, are not called to the attention
> of the court, and particularly in default cases
> where the issues affecting custody have not been
> fully tried, the court upon a proper application
> may consider all facts and circumstances, includ-
> ing those existing prior to and at the time of
> the judgment of decree, in making a subsequent
> determination of custody."

In King v. King, 25 Wis.2d 550, 131 N.W.2d 357, 359, the Supreme Court of Wisconsin stated:

> "Since custody of the children was granted upon
> the stipulation of the parties without testimony
> being taken on the issue and no finding of fit-
> ness was made, the court's determination is not
> res judicata nor does the rule of changed circum-
> stances apply. If the doctrine of res judicata
> applied in full force in custody cases, evidence
> of conduct occurring prior to the time of the
> determination of custody would be excluded on a
> later hearing. However, the doctrine does not
> apply unless there has been a finding of fitness.
> [Citing cases.] Even when such a finding has been
> made, the doctrine of res judicata is not to be
> applied to custody matters with strictness be-
> cause the rights of the child and of the public
> in the child's welfare should not be concluded
> by the nonaction of others."

And see cases cited in 9 A.L.R.2d 623. We decline to follow this line of authority. This Court stated in Simon v.

Simon, 154 Mont. 193, 197, 461 P.2d 851:

> "We have repeatedly held that custody of minor
> children should not be changed unless it can
> be shown that there was a substantial change
> in circumstances since the previous order was
> entered. As we set it forth in Trudgen v.
> Trudgen, 134 Mont. 174, 329 P.2d 225:
>
> "'It is the rule in this jurisdiction that
> while "a decree fixing the custody of children
> is final upon the conditions then existing,
> when it is shown that these conditions have
> changed, the court or judge then has authority
> to modify the original decree in respect to
> them * * * In proceedings of this nature the
> welfare of the children is the paramount con-
> sideration." Jewett v. Jewett, 73 Mont. 591,
> 595, 237 P. 702, 703.
>
> "'This rule was stated for the full court
> more than a quarter century ago and was reiter-
> ated in Bayers v. Bayers, supra, 129 Mont. [1]
> at page 6, 281 P.2d [506] at page 509, where
> it is pointed out that "otherwise either parent
> of a child or children could constantly harass
> the other with litigation none of which would
> be conducive to the best interests of the
> child." * * *'"

Whether the order respecting custody has been granted

after a full adversary proceeding or after a default divorce, as

in this case, the considerations are the same. The requirement

for a finding of a change in circumstances is designed to protect

the person who has custody from the harassment of further liti-

gation. We recognize that this line of reasoning would be in-

appropriate if appellant was in fact unfit to have custody. That

case is not now before us. The district court, in both the decree

of divorce and the order modifying custody, found that the appel-

lant was a fit and proper person to have the care, custody and

control of Derek. We hold merely that, based upon the facts of

this case, a showing of a substantial change of circumstances

should have been required before the district court inquired into

the custody issue on respondent's petition and that the district

court erred in holding that, solely because the issue of custody

was not "litigated" in the prior divorce hearing, the custody issue

could be litigated afresh before him.

We do not want to be understood as implying that a substantial change in circumstances would be required as a threshold finding in every factual situation before the issue of custody could be litigated on a petition to modify custody. Although the case is not before us, we would be receptive to the proposition that a showing of unfitness on the part of the person having custody, or some other justifiable grounds, might suffice and, despite a failure to show a substantial change of circumstances, enable the district court to consider the issue of custody on a petition to modify custody.

Appellant argues that respondent should not have been allowed to have custody of her child subsequent to the divorce without showing that Mark Svennungsen had been an unfit father and that there had been a substantial change of circumstances which would indicate that it would be in the best interest of the child to transfer custody to her. Appellant cites Barham v. Barham, 127 Mont. 216, 259 P.2d 805, for the proposition that "even though the mother had remarried there would be no change in custody without a finding that the child was being abused."

Even though the trial judge in Barham stated to counsel:

"There is nothing to show the child is not being cared for * * *."

this Court's reason for affirming the Barham case was because this Court could not "say that the trial judge in any wise or manner abused the discretion reposed in him in making the order denying the motion to modify the decree." Barham, at p. 220.

There is no requirement in the law of Montana that the party seeking a modification of the terms of a custody decree must make a showing that the person who presently has custody is unfit or has abused the child. If this Court were to require a showing of unfitness on the part of the person who presently

- 6 -

has custody before a custody decree could be modified, it would result in the situation that there could never be a change in custody if both parties were fit and proper persons to have custody. As stated above, a showing of unfitness may, in some situations, substitute for a change of circumstances. It will not, however, be required in addition to a showing of change of circumstances.

The district court, in its findings of fact, found:

"5. * * * that the parties first separated in the summer of 1972, and the agreement at that time was that she was to get set up with a job, a place to live, etc., and then she could have custody of the child, if her arrangements were satisfactory; that the arrangements of the mother were not satisfactory to the father, she did not get custody, and she returned to the family residence to be with the child; that almost immediately thereafter the divorce action was commenced; that again, it was decided that it would be in the best interest of the child if he stayed with his father while the mother got situated; that the mother firmly believed that she was to have custody of the child after she had a job, a place to live, etc.; that the father never intended that she have custody of this child, but he led the mother to believe that once she could provide adequate arrangements, in the best interests of the child, then she would have custody * * *."

and in its conclusions of law found:

"1. That the parties agreed, at the time of the divorce between them, that the mother was not then financially able to take the custody of the minor child of the parties, and support him in a manner that would be in the best interests of the child; that the father led the mother to believe that once she secured adequate employment, had an adequate place to live, and was otherwise in a position to financially take care of the minor child, that she would receive the custody of said child; that on that basis, she agreed that at the time of the divorce, the custody should be given to the father."

Respondent contends that because of this finding of fraud on the part of appellant, if for no other reason, the district court was justified in hearing testimony on child custody relating

- 7 -

back to and prior to January, 1973, and modifying the original decree accordingly. The record does show that appellant indicated to respondent prior to her leaving for Missoula in the summer of 1972 that she could have Derek once she got a job, an apartment and got settled. There is no evidence in the record that a similar arrangement was made for purposes of the Separation, Custody and Property Settlement Agreement. The strongest testimony in this regard was appellant's response to the following question on cross-examination:

> "Q. Now, if that is so, is it possible that you could have indicated this at other times? A. Possibly, right."

The mere possibility that such indication could have occurred is hardly sufficient proof that it did occur.

Neither does a reading of the record support a finding of fraud on the part of appellant. As stated above, the most the record will support is a finding that, in the summer of 1972, appellant indicated to respondent that she could have Derek once she got a job, an apartment and got settled. However, the mere making of a promise which the promisor fails to keep is not actionable fraud. Gallatin Tr. & Sav. Bk. v. Henke, 154 Mont. 170, 175, 461 P.2d 448. Rather, the record indicates that respondent signed the Separation, Custody and Property Settlement Agreement giving appellant custody of Derek, which was later incorporated into the divorce decree, because (1) appellant had convinced her that he was more "stable" than she was; (2) she wanted to avoid a prior act of adultery from being brought into open court; (3) she wanted a divorce and wanted to avoid a custody fight; and (4) she felt, in her own mind, that her act of adultery would bar her from having custody. Not only is there no showing of fraud, but the clear weight of the evidence is that respondent voluntarily agreed that appellant should have custody of Derek.

- 8 -

The district court made no finding as to whether there had been a substantial change of circumstances since the divorce decree of January 31, 1973. Respondent contends that, despite this lack of a finding, this Court should find a substantial change of circumstances in the following testimony of respondent"

> "A. Derek, has always, when I was living there in the house as the wife and the mother, my son always had three meals a day at the right times. He was always in bed. Now, when I left home and came back and would come back, Derek would be up until all hours of the night because Mark had been working and he didn't want to put him to bed. I mean, what I am trying to say is I may not eat regularly myself, and I may not go to bed at 10:00 every night, but I am positive that when my son is with me, he does these things. And I have always been very careful to do that."

Construing this testimony in the light most favorable to respondent, it is merely a statement that appellant allowed Derek to stay up late because he did not want to put him to bed. This is not a <u>substantial</u> change of circumstances sufficient to warrant a modification of a custody decree.

The only other change of circumstances testified to in the entire transcript was that appellant had remarried and his new wife had two children, ages two and four. In Simon v. Simon, 154 Mont. 193, 198, 461 P.2d 851, we stated: "'" * * * the substantiality of the change of circumstances is tested with respect to the child's welfare rather than the parents' welfare."'"

There is absolutely nothing in the transcript to indicate that this change of circumstances was detrimental to the welfare of Derek. Derek continued to be babysat during the day as before. The undisputed testimony of appellant and his present wife was that Derek was getting along well with his wife's children and that being around the children helped Derek. Even if appellant's remarriage be deemed a substantial change of circumstances, such a change should not result in relitigation of the custody issue if the change in fact enhances the welfare of the child.

Appellant contends that the district court in its conclusions of law erroneously found:

> "3.   That both parties hereto are fit and proper
> persons to have the care, custody and control
> of the minor child of the parties * * *."

and in its findings of fact found:

> "4. * * * that there was nothing in evidence of
> this hearing to show that either party is not a
> fit and proper person to have the care, custody
> and control of the minor child."

The issue as to whether respondent was in fact a fit and proper person to have custody at the time of the divorce is moot in light of the district court's finding on the petition to modify that both parties are fit and proper persons to have custody.

In view of the foregoing, respondent's motion to dismiss the appeal, based on the grounds that appellant "has failed to attack the findings of fact of the district court, either by point, legal argument or by legal citation or authority" is not well taken.   Other issues raised need not be discussed because our holding on this issue determines the case.

The order of the district court is reversed and the cause remanded to the district court for entry of an order denying the modification of the decree.

_Wesley Castles_
Justice

We concur:

_____
Chief Justice

_____

_____

_____ Conway Harrison _____
Justices

- 10 -