ROBERT W. DODDS, DAVID J. MERSY, ET AL., PLAINTIFFS AND
RESPONDENTS, *v.* GIBSON PRODUCTS COMPANY OF
WESTERN MONTANA, A LIMITED PARTNERSHIP, DEFENDANT
AND APPELLANT.

No. 14015.
Submitted Jan. 30, 1979.
Decided Feb. 28, 1979.
Rehearing Denied March 29, 1979.
593 P.2d 1022.

374

Murphy, Robinson, Heckathorn & Phillips, I. James Heckathorn argued, Kalispell, for defendant and appellant.

John R. Gordon, argued, S. Y. Larrick, Kalispell, for plaintiffs, and respondents.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

A jury sitting in District Court, Flathead County, Montana, returned a verdict for the plaintiffs in this breach of contract action and assessed damages at $11,667.00 Defendant filed this appeal.

Plaintiffs, Robert W. Dodds, David J. Mersy and Clayton C. Drake, are the sole owners of the capital stock of C. K. of Kalispell, Inc., a North Dakota corporation. In the fall of 1972, just prior to forming the corporation, plaintiffs came to Montana in search of possible construction sites for Country Kitchen restaurants. After viewing many sites, it was decided that resaurants would be built in Helena, Missoula, and Kalispell. The location chosen in Kalispell was owned by the defendant, Gibson Products Company of Western Montana, Ltd., of which Carl McAfee was the managing partner.

On March 8, 1973, the parties entered into an option contract, whereby defendant agreed to sell 30,000 square feet of real property located in the Gibson Shopping Center Development of West Kalispell, Montana, By a deed dated May 22, 1973, title to the land was transferred to plaintiffs.

Included in the option contract was the following warranty by defendant:

"5. A. Seller warrants that application has been made with City of Kalispell for creation of a Special Improvement District for the purpose of providing sewer and water facilities for the Gibson Shopping Center. If the S.I.D. improvements are not installed by June 1, 1973, or by Country Kitchen's opening after that date, they will be granted the right to hook up to seller's water supply at no charge. Seller will share in expense of septic tank on a 50-50 basis up to a total cost to seller of $750.00."

Defendant was represented at all times during the transaction by Carl McAfee. On premises adjacent to the land in question, McAfee was constructing a Gibson Products store which was targeted for opening in early summer of 1973, approximately the same time Country Kitchen was expected to open.

Although defendant warranted in writing that application had been made for an S.I.D. prior to the contract date of March 8, formal application was not made until July 31, 1973, plaintiff Dodds having filed the same. Actual construction of the water and sewer lines was not complete until July 11, 1975. Relying on defendant's warranty that plaintiffs could hook into defendant's water supply and share expenses of a septic tank, plaintiffs opened their doors for business. Again, defendant did not live up to the promises made in the contract. Defendant's water supply was inadequate for Country Kitchen's needs and it was not potable. Additionally, the soil porosity in the area was such that a septic tank could not be supported. Plaintiffs had to construct a water well and water system for the restaurant and install a sewage holding tank on the premises which was used until sewage facilities were made available by the S.I.D.

On July 22, 1975, plaintiffs filed a complaint in District Court, Flathead County, alleging in count I that defendant had breached the express warranty contained in the contract and had breached collateral warranties that had been made by McAfee. Specifically, plaintiffs complained that the language in paragraph 5.A. of the contract meant a petition for an S.I.D. had been made; defendant's water supply would be adequate and potable for Country Kitchen's needs; and the land would support a septic tank. As for the collateral warranties, plaintiffs allege that McAfee had orally promised the water and sewer lines would be completed by a specific date and that his water supply would be adequate for their needs. Count II of plaintiffs' complaint alleged that defendant's express warranty in the contract and collateral warranties by McAfee constituted fraud in the inducement. Plaintiffs requested an award of compensatory damages under counts I and II, and exemplary damages under count II.

A jury trial commenced May 31, 1977, with the Honorable Robert C. Sykes presiding. On June 3, 1977, the jury returned a general verdict for plaintiffs and awarded $11,667.00 in damages. Following denial of its motion for a new trial, defendant appealed.

Defendant's issues on appeal may be summarized as follows:

1. Did the District Court err in admitting parol evidence of circumstances surrounding execution of the option contract?

2. Did the District Court properly instruct the jury on the meaning of the parol evidence rule?

3. Did the District Court err in allowing the issue of fraudulent inducement to go to the jury?

4. Was there sufficient evidence to support the jury's verdict?

THE ADMITTANCE OF PAROL EVIDENCE

"When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understanding and negotiations will not be admitted for the purpose of varying or contradicting the writing." Corbin, *Contracts* § 573, p. 357. This substantive rule of

contract law, better known as the "parol evidence rule" is statutory in Montana, as are its exceptions. Section 93-401-13, R.C.M.1947, now section 70-20-202 MCA provides:

"93-401-13. *An agreement reduced to writing deemed the whole.* When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings.

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 93-401-17, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties."

This Court has held that where the terms of a contract are clear and unambiguous, parol evidence will not be allowed. However, we have also held that where the terms of the contract are ambiguous and uncertain, then evidence of attending circumstances is admissible. *Kielmann v. Mogan* (1970), 156 Mont. 230, 478 P.2d 275 (citing cases). ". . . [T]he question of whether an ambiguity exists is one of law for the court. But, where there is a conflict of testimony as to what were the intentions of the parties toward the use of the ambiguous word, determination of the true meaning is one of fact for the jury." *McNussen v. Graybeal* (1965), 146 Mont. 173, 186, 405 P.2d 447, 454.

As for count II of plaintiffs' complaint, "fraud in the inducement has always been held to be provable by parol, not withstanding the parol evidence rule." *Goggans v. Winkley* (1970), 154 Mont. 451, 459, 465 P.2d 326, 330; appeal after remand, (1972), 159 Mont. 85, 495 P.2d 594.

Defendant's argument ignores the exceptions of the parol

evidence rule. At trial, plaintiffs testified that, in their understanding of the contract, defendant had breached the warranty provision by failing to file a formal petition for an S.I.D. by not having an adequate and potable water supply, and by failing to provide suitable subsurface conditions for the operation of the septic tank system. Secondly, plaintiffs alleged that defendant's spokesman, Carl McAfee, had made statements and concealed information with the intent of fraudulently inducing plaintiffs to buy the land. Defendant denied the allegations. Since plaintiffs' complaint had alleged that a formal petition was not filed until July 31, 1973 (some five months after the execution of the contract, which warranted that "application" had been made) and further alleged that plaintiffs had to construct a water well and install a sewage holding tank, the District Court determined that ambiguities existed and admitted parol evidence thereby permitting the jury to determine the contracts true meaning. Likewise, since plaintiffs alleged fraud in the inducement, it was incumbent upon the court to admit parol evidence.

■ We conclude the District Court properly admitted parol evidence to resolve the ambiguities and determine whether the plaintiffs were fraudulently induced to enter into the contract.

■ Defendant's proposed instructions were insufficient because they explained the general rule, but failed to note the applicable exceptions. The District Court, having determined the case involved exceptions to the rule, properly gave plaintiffs' proposed instructions to the jury.

## THE ALLEGATION OF FRAUDULENT INDUCEMENT

Defendant cites the general rule—the mere making of a promise which the promisor fails to keep is not actionable fraud, *Svennungsen v. Svennungsen* (1974), 165 Mont. 161, 527 P.2d 640; 37 Am.Jur.2d *Fraud and Deceit* § 57—to support its contention that the facts of this case do not constitute fraud. However, only one of plaintiffs' allegations involved a matter of futurity. Without question, a warranty that application for an S.I.D. had been made, when in fact it had not, relates to a present or preexist-

ing fact and would be fraudulent. Similarly, concealment of information concerning the adequacy of the water supply, its potability, and the porosity of the land would amount to fraud, if proved. Only plaintiffs' allegation that Carl McAfee repeatedly promised that the water and sewer lines would be installed by Country Kitchen's opening date involved a matter of futurity.

Quoting from defendant's source:

"In some instances, because of the particular fact situation involving the relationship of future events to the false intention of a representor, fraud may be predicated upon false representations involving futurity. The view generally taken is that if the person making the statement as to a future event is guilty of an actual fraudulent intent, and makes the misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result to the latter's injury, fraud may, under many circumstances, be predicated thereon, not withstanding the future nature of the representation. This conclusion is reached frequently on the theory that a person's intention of belief is a matter of fact and that, therefore, if a misrepresentation is made with regard to the same, the misrepresentation is one of fact. Where a person fraudulently and positively, as with personal knowledge, states that something is to be done or is to occur when he knows that it is not to be done or to occur, the statement will support an action in fraud. This is not a case of prophecy or predication of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which something is to occur where the party making the affirmation knows perfectly well that no such thing is to occur; such statements and representations, when false, are actionable. *False representation as to future events will constitute fraud where these events depend upon the acts of the party making the representations and form the inducement whereby the other party is led into the transaction . . .*" 37 Am.Jur.2d *Fraud and Deceit* § 59 (Emphasis added.)

This qualification of the general rule is consistent with section 13-308, R.C.M.1947, now section 28-2-405 MCA which provides:

"13-308. *Actual fraud, acts constituting.* Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance with intent to deceive another party thereto, or to induce him to enter into the contract:

". . .

"4. A promise made without any intention of performing it;"

 Plaintiffs alleged McAfee continually promised that the water and sewer lines would be installed in time for the restaurant's opening when he knew, in fact, that this was impossible because he had not filed a petition for an S.I.D. Therefore, based on the above-quoted rule, we find that plaintiffs' allegations supported a theory of fraud.

THE JURY'S VERDICT

 If there is a conflict in the evidence, this Court can only review the testimony to determine whether there is any substantial evidence in the record to support the jury verdict, and we must accept the evidence found as true unless it is so inherently impossible or improbable as not to be entitled to belief. If substantial evidence appears in the record to support the judgment, it will not be disturbed on appeal. *Strong v. Williams* (1969), 154 Mont. 65, 460 P.2d 90.

A review of the record before us reveals the following evidence upon which the jury could have reasonably based its verdict:

 Defendant warranted in the option contract, dated March 8, 1973, that "application" had been made with the City of Kalispell for the creation of a Special Improvement District. On July 31, 1973, Robert Dodds was informed by Kalispell city officials that a petition for creation of an S.I.D. had not been filed, so Dodds filed the petition himself. Previously, Carl McAfee had repeatedly assured the plaintiffs that water and sewer lines would be installed by Country Kitchen's targeted opening date, which was sometime in June 1973. This was impossible since the petition had not been filed. Carl McAfee admitted that he had not filed a petition for the S.I.D. and merely said, "we were doing everything

possible to get this S.I.D., that we [were] working toward that goal." Plaintiffs stated they would not have purchased the property without McAffe's assurances.

According to the water well drilling contractor, the well on defendant's land was physically incapable of supplying Country Kitchen's needs. Also, a potability test of the water in the well showed the water to be contaminated. Finally, Carl McAfee was informed by the County Health Department in June 1973, that a septic tank was not acceptable and that a sewage holding tank was necessary. Despite his knowledge, McAfee did not inform the plaintiffs of these facts.

We find no error in the rulings of the District Court, and there is substantial evidence in the record to support the jury's verdict. Therefore, the judgment in accordance with the jury's verdict is affirmed.

MR. CHIEF JUSTICE HASWELL, and JUSTICES DALY, HARRISON and SHEA concur.