No. 92-327

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ROBERT DEW, LEIGHTON DRESCH and
JAMES POSEY,

     Plaintiffs and Respondents,

-vs-

DOUGLAS C. DOWER and ALYCE S. DOWER,
also known as ALICE S. DOWER,

     Defendants and Appellants.

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Robert J. Emmons and Joseph M. Sullivan, Emmons &
           Sullivan, Great Falls, Montana

       For Respondent:

           Patricia O'Brien Cotter, Cotter & Cotter, Great
           Falls, Montana

FILED

MAY 3 1993

Filed: _Ed Smith_
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  November 11, 1992

Decided:  May 3, 1993

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The Dowers appeal from a judgment of the Eighth Judicial District Court, Cascade County, finding that they fraudulently induced plaintiffs Dew, Dresch and Posey to enter contracts for deed. We affirm liability, but reverse and remand to recalculate damages.

This case previously came before us after the District Court granted a directed verdict in favor of the Dowers. Dew v. Dower (1989), 237 Mont. 476, 774 P.2d 989 (Dew I). In Dew I, we ruled that a jury question existed as to whether the Dowers fraudulently induced the plaintiffs into entering contracts for deed. Dew 774 P.2d at 991.

Following a subsequent trial, the District Court determined that Alice Dower did fraudulently induce the plaintiffs to purchase property. The court found that she misrepresented the intended quality of road she promised to build as access to the property. Accordingly, the court granted monetary damages to each of the plaintiffs.

The issues on appeal are restated as follows:

1.  Whether the District Court erred in admitting parol evidence that Alice Dower orally promised to improve the road, without first requiring plaintiffs to prove that she intended to defraud them.

2

2. Whether the District Court erred in determining that Alice Dower intended to defraud the plaintiffs when she induced them into entering the contracts for deed.

3. Whether the statute of limitations barred plaintiffs' claims of fraud against the Dowers.

4. Whether the District Court erred in determining damages.

   A. Whether the court's property valuation was clearly erroneous.

   B. Whether the District Court erred in awarding prejudgment interest.

   C. Whether one co-tenant can sue for tort damages in a personal action arising from the tenancy and recover the entire amount of damages to both him and the other co-tenant.

   D. Whether a court has jurisdiction to offset a tort judgment with the amount the plaintiffs owe the defendants on the contracts underlying the tort.

In May 1981, the Dowers purchased 205 acres of undeveloped land south of Great Falls, Montana for $75,000. They subdivided the land into ten tracts, each consisting of approximately twenty acres. During 1982 and 1983, the Dowers sold some of the tracts to the plaintiffs through separate contracts for deed.

The purchase price was $1000 per acre. Defendant Alice Dower admitted at trial that she set the price based on intended roadway improvements. In addition, she told plaintiff Dew that the purchase price reflected the fact that she would construct improved roadways.

Before entering into any agreements, Alice Dower told each plaintiff that she would provide improved access roads to the

3

tracts. She showed each of the plaintiffs a survey plat depicting sixty-foot rights-of-way reserved for roadways in two locations on the property. While showing the property to prospective buyers, she pointed out some stakes marking the rights-of-way. She told each of the plaintiffs that between the stakes she would build a road with a twelve-foot wide ditch on each side.

The parties all agree that Alice Dower promised to improve the roads. The parties also agree that when she promised to provide access from the county roads to the plaintiffs' tracts, she told them she could not guarantee the location of the access. She could not guarantee the location because she was negotiating a relocation of the railroad crossing with Burlington Northern Railroad (BN). The dispute centered on whether she promised county-grade roads or merely promised to improve the roads.

The evidence showed that the minimum "county-grade" road for Cascade County is a gravel road twenty-eight feet wide from shoulder to shoulder. The gravel on the shoulders may taper off beyond the outside edges. The roadbed must consist of a twenty-four foot wide surface with a base of eight inches of pit run gravel covered with two inches of 1 1/2 inch minus crushed gravel.

Alice Dower testified that she promised to provide a passable access road, but she denies promising county-grade roads. According to realtor Ken Stone, however, Alice Dower said she would construct county-grade roads with ditches. Stone testified that she told him county-grade roads were necessary for the county to

4

assume responsibility for maintaining the roads. Alice Dower testified she intended that Stone relay what she told him to prospective purchasers.

Stone testified that he informed plaintiff Dresch that the Dowers would construct roads and turn them over to the county for maintenance. Dresch corroborated Stone's testimony. Likewise, plaintiffs Dew and Posey testified that Alice Dower told them, during their respective negotiations, that she would construct county-grade roads. That way, she told them, the land owners could petition the county to maintain the roads and the county could not deny their request.

In the summer of 1983, after the plaintiffs had purchased all but one of their respective tracts, the Dowers did some road work. Defendant Douglas Dower and another man leveled out one access road where it intersected the county road and made a pass over both access roads with a grader. The Dowers did some additional road construction in the summer or fall of 1985. However, it is undisputed that the road construction did not improve the roads to county-grade standards.

According to Douglas Dower, roots and grass remained in the road after he worked on it. He testified that an automobile could navigate the road in good weather, but a person would need a chained-up four wheel drive vehicle to travel the road in wet weather. He also testified that his idea of the roadway was

5

something like two parallel cow paths and he never intended to do any work on the road other than what he completed that day in 1983.

At trial, the plaintiffs introduced photographs of the roads as they looked in 1987. The pictures show narrow, one-lane dirt roads with deep ruts and no gravel. Alice Dower said that the pictures accurately reflect the improved roadways she promised the plaintiffs, but the roads had gone three years without maintenance. She testified that she had adequately performed her promises to provide the plaintiffs with improved roadways.

This opinion refers to additional facts where they are pertinent to the discussion.

I.

Did the District Court err in admitting parol evidence that Alice Dower orally promised to improve the road, without first requiring the plaintiffs to prove that she intended to defraud them?

The Dowers contend that evidence of Alice Dower's promises of future road construction was not admissible unless the plaintiffs first showed that she intended to defraud them when she made the promises. The Dowers further argue that the parol evidence rule prevents the court from considering any oral statements made before the parties entered the contracts for deed.

We need not delve into the merits of these contentions because the Dowers failed to object at trial to testimony about promises concerning the road construction. Without a proper objection at

6

trial, the Dowers waived the right to raise the matter on appeal. See Matter of B.L.O. (1984), 213 Mont. 164, 169, 689 P.2d 1246, 1249. Accordingly, we hold that the District Court did not err in allowing parol evidence concerning Alice Dower's promises to improve the road.

The Dowers also argue that the court's conclusion of law "D" incorrectly states the law. We disagree.

Conclusion of law "D" states:

> Fraud in the inducement has always been provable by parol evidence, notwithstanding the Parol Evidence Rule. Dodds v. Gibson Products Company of Western Montana [(1979), 181 Mont. 373, 377, 593 P.2d 1022, 1024]. When plaintiffs allege fraud in the inducement, it is incumbent on the Court to admit parol evidence on the question. Dodds, [593 P.2d at 1025].

In Dew I we cited Dodds for the proposition that to prove fraud in the inducement based on promises to be performed in the future, plaintiffs must also introduce evidence that the defendant intended to defraud them at the time she made the promises. See Dew, 774 P.2d at 990.

The Dowers interpret Dew I to mean that before the District Court could allow any parol evidence concerning Alice Dower's promises concerning road construction, the plaintiffs first had to prove that she intended to fraudulently induce them to enter the contracts. However, this is not necessary as long as the plaintiffs ultimately present a prima facie case of fraud in the inducement. The parol evidence rule does not apply in cases such as this one, because the alleged fraud does not directly contradict

7

the terms of the express written contract. See Sherrodd v. Morrison-Knudsen (1991), 249 Mont. 282, 285, 815 P.2d 1135, 1137.

The District Court took conclusion of law "D" almost verbatim from Dodds, 593 P.2d at 1024, 1025. We conclude that conclusion of law "D" is accurate and a more definitive statement of the law than the Dowers' interpretation.

## II.

Did Alice Dower intend to defraud the plaintiffs when she induced them into entering the contracts for deed?

The issue of whether Alice Dower had an intent to defraud presents a question of fact. This Court will not set aside factual findings of a trial judge sitting without a jury unless the findings are clearly erroneous. Rule 52(a), M.R.Civ.P.

This Court uses a three part test to determine if a finding is "clearly erroneous" as provided in Rule 52(a). First, we review the record to see if substantial evidence supports the finding. If the necessary evidence exists, we then determine whether the trial court misapprehended that evidence. Finally, although the trial court correctly construed the evidence, we may still determine that a finding is clearly erroneous if we have a definite and firm conviction that the trial court made a mistake. Interstate Prod. Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

The following evidence supports the District Court's finding that Dower intended to defraud the plaintiffs when she induced them to enter the contracts for deed.

8

Alice Dower showed the plaintiffs a survey plat depicting 60-foot rights-of-way where she promised she would construct improved roads. While showing the property to each of the plaintiffs at various times from 1982-83, she pointed out stakes marking where she intended to construct the improved access roads. She testified that she informed the plaintiffs she was a real estate broker so they would rely on her promises to provide improved access roads.

Plaintiffs Dew and Posey testified that Alice Dower promised to improve the roads to county-grade standards and they relied on her promises. A realtor testified that Alice Dower asked him to tell prospective buyers that she would provide county grade roads so the county would maintain the roads for the subdivision. The realtor relayed the information to Dresch, who relied on it.

Alice Dower disputes their testimony, stating that she merely promised to improve the roads. In a bench trial, the judge has the best opportunity to ascertain the credibility of a witness. Rule 52(a), M.R.Civ.P. Apparently, the judge did not find Alice Dower a credible witness on this point, as he found that she promised to improve the roads to county-grade standards.

Alice Dower knew about county-grade roads. Before Posey purchased his tract, he asked her the significance of a county-grade road. She gave a description that substantially fit a county-grade road.

The plaintiffs introduced photographs of the roads as they looked in 1987. The court found, and we agree, that the roads

9

shown in the plaintiffs' photographs are obviously not, and never were, up to county-grade standards as promised by Alice Dower. According to Alice Dower, the photographs accurately reflect the improvements she intended when she promised the plaintiffs improved roads. If, as Alice Dower testified, the rough-graded dirt roads in the photographs depict the roads that she intended when she promised county-grade roads, then it is clear that the District Court could find she had no intention of performing her promises when she told the plaintiffs she would construct county-grade roads.

As the court concluded, there is substantial evidence that Alice Dower had no intention of performing her promises when she made them. We do not have a definite and firm conviction that the District Court made a mistake. Consequently, we hold that the court did not err in finding that Alice Dower intended to defraud the plaintiffs when they entered their respective contracts for deed.

III.

Did the statute of limitations bar the plaintiffs' claims of fraud against the Dowers?

Plaintiffs filed suit in October 1986. The applicable statute of limitations is as follows:

> The period prescribed for commencement of an action for relief on the ground of fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the fact constituting the fraud or mistake.

10

Section 27-2-203, MCA.

The District Court determined that the cause of action accrued in the summer or early fall of 1985. The time at which the statute of limitations began to run is a question of fact. Accordingly, we will not set aside the court's finding unless it is clearly erroneous under the three part test discussed above. See Rule 52(a), M.R.Civ.P.; DeSaye, 820 P.2d at 1287.

The following evidence supports the court's determination that the statute of limitations did not bar the plaintiff's fraud claims against the Dowers.

Dresch testified that, before the plaintiffs filed suit, he contacted the Dowers every three or four months for four years. He testified that the Dowers continually assured him they would do road construction and gave him various excuses why the work had not yet commenced. The Dowers' main excuse was that they were working with BN on an alternative easement across the railroad tracks.

BN had denied requests to allow a railroad crossing, so the Dowers filed for a prescriptive easement early in 1985. In the spring of 1985, Alice Dower told Dresch that once BN had time to react to notice of the prescriptive easement, she would bring the access road up to standard. She said she would have to wait two months so BN would have sufficient time to react. Dew testified that Alice Dower told him the same thing.

Dew further testified that in September or October of 1985, he asked Alice Dower when she planned to improve the roads. She told

11

him that she still planned to have the work done but it was too muddy to get the gravel trucks in and out of the area.

Alice Dower testified that she actually had road construction done three times. In 1983, she had a grader scrape the road. In August or September of 1985, she had some work done on a ditch along one of the roads. She also had a mudhole filled in and a culvert installed. Dew testified that the last of this work was done in the fall of 1985.

In the fall of 1983, after the grader made a pass over the roads, Posey called Alice Dower. She told him that she would not do any more work on the upper road. Posey did not discuss the roads with the Dowers again. He did, however, communicate with Dew and Dresch about their conversations with the Dowers on the subject. Posey and Dew were friends and because Dew and the Dowers were related by marriage, Posey relied on Dew to communicate with the Dowers about the road construction.

The court found that with the exception of one conversation with Posey in 1983, the Dowers continued through the summer or fall of 1985 to assure the plaintiffs that they would improve the roads as Alice Dower had promised. Until the early fall of 1985, the Dowers' statements and actions led the plaintiffs to believe that the Dowers would do the road construction as promised.

We find there was substantial evidence to support the court's determination that the statute of limitations did not begin to run for any of the plaintiffs until at least the early fall of 1985,

12

the earliest time the plaintiffs could have discovered all of the facts constituting the fraud.

The plaintiffs filed their case in October 1986, which is within the two year statute of limitations as prescribed in § 27-2-203, MCA. The court did not misapprehend the evidence and we do not have a definite and firm conviction that the District Court made a mistake. We therefore hold that the statute of limitations does not operate to bar the claims of any of the plaintiffs.

IV.

Did the District Court err in determining damages?

The court awarded each plaintiff damages representing the difference between the amount plaintiffs paid for their property, $1000 per acre, and the fair market value of the property following the actual improvements completed on the roadways by the Dowers, $500 per acre. In other words, the court awarded each plaintiff $500 multiplied by 20 acres multiplied by the number of 20 acre tracts purchased by that plaintiff.

The court also awarded prejudgment interest at a rate of 10% simple interest per annum beginning in August 1983. The court approximated that the damages were fixed when the Dowers performed the road improvements at that time.

Dresch purchased one lot before August 1983. The court calculated his damages as $10,000 principal plus 10% per annum from August 1983 through February 1992. Specifically, $10,000 plus

13

$1000 interest per year for eight and one-half years, which equals $18,500.

Likewise, Posey purchased one lot before August 1983. Total judgment in his favor was also $18,500.

Dew negotiated the purchase of seven lots before August 1983. He had entered contracts for deed on six of the lots before that date and he entered the seventh in February 1984. The court calculated Dew's damages as $70,000 principal plus interest at a rate of 10% per annum on the principal. Interest on the $70,000 judgment was $8,500 per tract, for a total prejudgment interest award of $59,500. Total judgment in favor of Dew was $129,500.

The court also ruled that each plaintiff should receive post-judgment interest on the unpaid balance at the rate of 10% per annum until paid in full. In addition, the court ruled that the damage awards would be offset by the amount of money each plaintiff owed the Dowers under the respective contracts for deed.

A. Was the court's property valuation clearly erroneous?

The Dowers contend that the District Court erred by determining damages in the amount of $500 per acre. They argue that $1000 per acre was a reasonable value for the property.

The Dowers paid $366 per acre for 205 acres in May 1981. They sold the property to the plaintiffs in 20 acre tracts for $1000 per acre in 1982-83. Alice Dower testified that the sale price reflected the fact that she would provide improved roadways from the county road through the subdivided tracts. The plaintiffs each

14

testified that they agreed to pay $1000 per acre because she promised to provide the subdivision with county-grade roads.

The plaintiffs as landowners had a right to give reasonable testimony as to the value of their property for the uses to which they put the property. See Zugg v. Ramage (1989), 239 Mont. 292, 297, 779 P.2d 913, 916; State Highway Comm'n v. Marsh (1974), 165 Mont. 198, 203, 527 P.2d 573, 575. Dew testified that his property was worth $400 per acre after the Dowers completed the road construction in the summer of 1983. He further testified that the 1983 road construction made access even more difficult than before, because it created runoff areas converging at the main access. According to Posey, the fair market value of his property was $500-$600 per acre following the road construction. Dresch estimated that his property was worth $500 per acre in the summer of 1983.

The Dowers presented their own evidence of higher property values, but the court found the plaintiffs' evidence more convincing. The District Court determined that $500 was a reasonable estimation of the property's fair market value after the road construction in 1983.

Substantial evidence supports the District Court's valuation and the court did not misconstrue the evidence. We do not have a firm and definite conviction that the court made a mistake. Consequently, we find no cause to disturb the court's determination of the property values. See DeSaye, 820 P.2d at 1287; Rule 52(a), M.R.Civ.P.

15

B.   Did the District Court err in awarding prejudgment interest?

The Dowers contend that the District Court did not have a legal basis to award prejudgment interest.   As this presents a question of law, we determine whether the District Court was correct.   See Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

The court cited § 27-1-212, MCA, as authority for its prejudgment interest award.   That statute states in pertinent part: "In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."   Section 27-1-212, MCA.   The Dowers argue that because the trier of fact in this case was a judge, rather than a jury, the court had no authority to award prejudgment interest.   We disagree.

Montana patterned the statute after the California Civil Code § 3288.   When interpreting a statute adopted from a sister state, we generally follow the construction placed on the statute by the highest court of the state from which it was adopted.   State v. Murphy (1977), 174 Mont. 307, 311, 570 P.2d 1103, 1105.   The pertinent language of § 27-1-212, MCA, is identical to that of the California statute.

The California Supreme Court noted that while the statute grants authority to award prejudgment interest only "to the 'jury,' the trial court, when acting as the trier of fact, may award prejudgment interest under [the statute]."   Bullis v. Security Pac.

16

Nat'l Bank (Calif. 1978), 582 P.2d 109, 116 n.16. Similarly, we hold that § 27-1-212, MCA, gives a District Court judge authority to award prejudgment interest when the judge, rather than a jury, is sitting as the trier of fact.

The Dowers further argue that the discretionary interest statute, § 27-1-212, MCA, does not give a court the authority to award prejudgment interest, unless the court can pinpoint a date from which the defendants owed and should have paid a sum certain to the plaintiffs. As authority for their argument, the Dowers cite several cases interpreting a different statute, § 27-1-211, MCA. See Thayer v. Hicks (1990), 243 Mont. 138, 793 P.2d 784; McPherson v. Schlemmer (1988), 230 Mont. 81, 749 P.2d 51; Safeco Ins. Co. v. Lovely Agency (1985), 215 Mont. 420, 697 P.2d 1354. That statute gives a person the right to recover prejudgment interest only from the particular day that the right to a sum certain in damages vests. Section 27-1-211, MCA; Thayer, 793 P.2d at 796.

In this case, the District Court awarded interest under the discretionary interest statute, § 27-1-212, MCA, rather than the right to interest statute, § 27-1-211, MCA. The statute on discretionary interest awards does not specify rigid certainty requirements, as does the right to interest statute. See § 27-1-212, MCA; § 27-1-211, MCA.

In contested fraud cases, like contested negligence cases, the right to recover a sum certain in damages usually does not vest

17

until the date of the court's judgment. Cf. McPherson, 749 P.2d at 54 (in cases where liability for negligence is contested, the right to recover damages vests "only on the date of the jury verdict, not on an earlier date certain"). Therefore, to interpret the discretionary interest statute to require absolute certainty, as to the specific time a sum certain in damages vests, before the trier of fact may award prejudgment interest would render the statute inoperative as to fraud cases. "An interpretation which gives effect is preferred to one which makes void." Section 1-3-232, MCA.

In addition, the Supreme Court of California has held that the statute allows a trier of fact to award prejudgment interest whether or not plaintiff's damages are "liquidated" before entry of judgment. Redke v. Silvertrust (Calif. 1971), 490 P.2d 805, 812. Likewise, we hold that in cases where it applies, § 27-1-212, MCA, gives the trier of fact the discretion to award prejudgment interest whether or not the plaintiff's right to receive a sum certain in damages has vested before judgment. The District Court was correct in determining that the statute gave it discretionary authority to award prejudgment interest in this case.

The Dowers further contend that the District Court erred in awarding plaintiff Dew interest for damages on the last tract he purchased, starting before he purchased the tract. We agree.

The judge awarded interest from the day that the Dowers did the road construction. He determined that the damages were fixed

18

on that day in August of 1983. Dew had purchased six tracts before August 1983, but he purchased a seventh tract in February 1984.

By awarding interest starting six months before Dew purchased the seventh tract, the District Court over-calculated the prejudgment interest due on Dew's interest in that tract. We hold that interest on the seventh tract should begin on the date Dew purchased the tract.

C.  May one co-tenant sue for tort damages in a personal action arising from the tenancy and recover the entire amount of damages to both him and the other co-tenant?

Initially, the wives of plaintiffs Dew, Dresch and Posey were also plaintiffs in the case because they were co-tenants with their respective husbands. An examination of the contracts for deed shows the vendees were tenants in common.

At trial, the claims of the female co-tenants were withdrawn during arguments on the Dowers' motion for a directed verdict. Apparently, the plaintiffs saw no need to keep the female co-tenants as parties to the suit because there was no evidence that the Dowers made any misrepresentations to these women.

Although the plaintiffs each owned only a one-half interest in their respective tracts, the District Court awarded each plaintiff damages representing the difference between the amount each pair of co-tenants paid for their property and the fair market value of the property.

In Montana, a tenant in common may bring or defend an action in vindication of the tenant's own rights without joining the other

19

co-tenants as necessary parties. Section 70-1-310, MCA. However, absent an authorized agency relationship between co-tenants, we find no authority for one co-tenant to sue for the entire amount of tort damages to both him and the other co-tenant in a personal action arising out of the tenancy.

Adopting a general rule that allows one co-tenant to sue for all of the damages could easily infringe on the rights of another co-tenant, thus creating due process problems. See Mayo v. Jones (Wash.App. 1972), 505 P.2d 157, 161. In addition, co-tenants are not generally agents of each other and do not have the privity necessary for application of the doctrine of res judicata. 46 Am.Jur.2d Judgments § 573. Therefore, a rule allowing one co-tenant to sue in a personal action for the entire amount of tort damages for injury arising out of the tenancy could expose defendants to multiple actions.

Furthermore, the plaintiffs in this case asked the court to dismiss the female co-tenants from the suit because the Dowers did not make any misrepresentations to them. On dismissal with prejudice, the court lost jurisdiction over the female co-tenant's interests in the property. See Rule 41(a), M.R.Civ.P.; Miller v. Northern Pac. Ry. (1904), 30 Mont. 289, 296, 76 P. 691, 694. A court cannot rule outside of its appointed sphere. A court's actions are void with respect to persons who are not party to its proceedings. Sloan v. Byers (1908), 37 Mont. 503, 510-13, 97 P. 855, 857-58.

20

Without deciding whether a single co-tenant may sue for tort damages for injury to the property itself and recover the entire amount, we hold that the court in this case erred in awarding damages for injury to the personal interests of persons who were not plaintiffs at the time of judgment. We remand to the District Court to determine the damages to the interests of the plaintiffs before the court.

D.      Does a court have jurisdiction to offset a tort judgment with the amount the plaintiffs owe the defendants on the contracts underlying the tort?

The District Court required Alice Dower to file an accounting reflecting the principal balance due her from each of the plaintiffs for property purchased from her under the contracts for deed. The court then offset and credited the amounts due the plaintiffs from the judgment against the balance of the principal owed by the plaintiffs under the contracts for deed.

Generally, "a judgment must be based on a verdict or findings of the court and must be within the issues presented to the court." Old Fashion Baptist Church v. Mont. Dep't of Revenue (1983), 206 Mont. 451, 457, 671 P.2d 625, 628 (quoting National Surety Corp. v. Kruse (1948), 121 Mont. 202, 205-06, 192 P.2d 317, 319). In this case, the contracts themselves were not at issue before the court.

However, the respective obligations of the parties arise because of the same transaction, and the damages relate to the value of the premises and the purchase price, which was the basis of the principal under the contract. The District Court may act as

21

a court of equity and use its authority to allow or compel set-off under special and peculiar circumstances like those presented in this case. The power to allow a set-off of debts by a court of equity exists independent of statute where grounds for equitable interposition are shown, such as fraud or insolvency. Southern Surety Co. of New York v. Maney (Okla. 1941), 121 P.2d 295, 298.

The District Court acted within its equitable authority when it offset the principal amounts due under the contracts with the judgment in this case. We affirm in part, reverse in part, and remand to the District Court to recalculate damages consistent with this opinion.

_____
                                    Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

22

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's holding under Issues I, II, III, and IV(A), IV(B), and IV(D).

I dissent from the majority's opinion under Issue IV(C).

## CO-TENANT DAMAGES

The majority states that it could find no authority for one co-tenant to sue for the entire amount of tort damages to both him and the other co-tenant. The majority did not look hard enough. Other jurisdictions have allowed co-tenants to recover for the entire amount of damages to the tenancy whether the nature of the actions are in tort or in contract.

In *Hurwitz v. CGJ Corporation* (Fla. 1964), 168 So. 2d 84, the Florida Supreme Court allowed one co-tenant to recover all of the damages to commonly held property under circumstances very similar to those in this case. In the *Hurwitz* case, the plaintiff purchased an interest with another co-tenant in a 99-year lease based on representations made by the defendants concerning the construction of an apartment unit on the leased property. That court found that where there had been a breach of the contract, it was correct to award damages based on the amount of damage sustained to the entire leasehold, even though the individual plaintiff had only a 37 percent interest in the property. In *Lambert v. United States* (1961), 153 Ct. Cl. 501, the United States Court of Claims held that where the government breached its lease covenant to restore leased premises

23

to their original condition, the fact that plaintiff had owned only an undivided one-half interest in the tract did not prevent her from recovering the entire amount of cost necessary to restore the tract. That court held that any obligation the plaintiff may have had to account to her co-owner was immaterial. It held that the government had an obligation to restore the entire tract, rather than just that portion of the tract which represented the plaintiff's ownership interest.

For the same result in a tort cause of action, see *Pfannenstiel v. Central Kansas Power* (Kan. 1960), 352 P.2d 51. In that case, the Kansas Supreme Court allowed one co-tenant to recover the entire amount of damage to the co-tenancy realty cased by a third party's tortious act.

Generally, in the jurisdictions which have allowed recovery for the entire damage to the co-tenancy, those courts have held that all but the plaintiff's proportionate share is to be held for the use and benefit of the other co-tenants. By resolving the issue in this manner, those courts have avoided the multiplicity of suits, which concerns the majority, while still protecting the nonparty co-tenant's interest and allowing for a clear disposition of the issues at trial. *Pfannenstiel*, 352 P.2d at 55-56.

In addition to being contrary to the above authorities, the majority's conclusion is unfair and devoid of common sense. Only one of two results can occur from the majority's conclusion. Either the defendants, who defrauded the plaintiffs, reap a

24

windfall by avoiding liability for one-half of the damages caused by their conduct, or the plaintiffs' spouses must attempt to pursue additional litigation, thereby creating the kind of "multiple actions" about which the majority expresses concern.

For these reasons I dissent from that part of the majority opinion which reverses and reduces the District Court's award of damages to the plaintiffs.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing concurrence and dissent.

_____
Justice

25

May 3, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Joseph M. Sullivan
EMMONS & SULLIVAN
608 Strain Building
Great Falls, MT 59401

Patricia O'Brien Cotter
COTTER & COTTER
P.O. Box 3425
Great Falls, MT 59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy