No. 94-232

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ROBERT DEW,

        Plaintiff and Appellant,

DOUGLAS C. DOWER and ALICE S. DOWER
a/k/a ALICE S. DOWER,

        Defendants and Respondents.

FILED

DEC 16 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Patricia O'Brien Cotter; Cotter & Cotter,
            Great Falls, Montana

        For Respondents:

            Joseph Sullivan, Emmons & Sullivan, Great
            Falls, Montana

Submitted on Briefs:  September 22, 1994

Decided:  December 16, 1994

Filed:

_____
           Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Robert Dew appeals from the findings of fact, conclusions of law, and final judgment of the Eighth Judicial District Court, Cascade County, concluding that he was entitled to fifty percent of the personal damages arising from Alice Dower's fraud and determining the amount of his damages to be approximately $36,000. We affirm the District Court's conclusion regarding the percentage of damages to which Robert Dew is entitled, but reverse and remand for recalculation of the amount of those damages.

Prior to August 1983, Robert and Sally Dew acquired six tracts of land in a subdivision south of Great Falls, Montana, from the Dowers under six individual contracts for deed. Each tract, consisting of slightly more than twenty acres, sold for $1,000/acre. The Dews entered into a contract for deed for a seventh tract in February 1984. Alice Dower, a licensed real estate broker, represented to Robert Dew that the purchase price was based on plans to upgrade two access roads to "county grade" standards.

When the Dowers failed to improve the access roads to county grade standards, the Dews and other purchasers brought suit against the Dowers alleging, among other things, fraud. Their allegations of fraud were based on Alice Dower's representations concerning improvements to be made to the roads. The Dowers moved for a directed verdict at the close of the Dews' case-in-chief and, at that point, the Dews' attorney asked the District Court to dismiss

Sally Dew's claims. The court dismissed her claims with prejudice and entered a directed verdict in favor of the Dowers. Robert Dew appealed. We reversed the directed verdict and remanded the case for a new trial, holding that a jury question existed on the issue of whether Alice Dower fraudulently induced Robert Dew into purchasing the tracts. Dew v. Dower (1989), 237 Mont. 476, 480, 774 P.2d 989, 991.

In 1990, between the first appeal and the second trial, Sally Dew quitclaimed her one-half interest as co-tenant in the seven tracts to Robert Dew, resulting in his one hundred percent ownership of the tracts. On remand, the District Court found that Alice Dower had defrauded Robert Dew and awarded him one hundred percent of the damages. The Dowers appealed, arguing that Dew was not entitled to one hundred percent of the damages because he had owned only a one-half interest in the total fraud claims before the District Court. We reversed the District Court and remanded for recalculation of damages for plaintiffs who were before the court. Dew v. Dower (1993), 258 Mont. 114, 128, 852 P.2d 549, 558 (Dew II).

On remand, the District Court concluded as a matter of law that Robert Dew, by virtue of his one-half interest in the property, was entitled to one-half of the damages resulting from Alice Dower's fraud. The District Court offset the balances owing on the individual contracts for deed by the corresponding damages and prejudgment interest. Robert Dew appeals.

Robert Dew's first assertion of error relates to the District

3

Court's conclusion of law that Robert, the sole owner of the property at the time of judgment against the Dowers, was entitled to only fifty percent of the damage award. Dew argues that, as the sole owner of the property at the time of judgment, he is entitled to one hundred percent of the damages resulting from Dower's fraud. We disagree.

The District Court's conclusion that Robert Dew was not entitled to one hundred percent of the total damages was premised on two bases. First, because Sally Dew had withdrawn her claims against the Dowers and the court had dismissed those **claims** with prejudice during the first trial, she retained no right to damages and, thus, the quitclaim deeds did not result in Robert Dew acquiring Sally's right to **claim** damages. Second, the court relied on our decision in Van Ettinger v. Pappin (1978), 180 Mont. 1, 588 P.2d 988, in concluding that Robert had acquired Sally's interest in the property knowing of the claimed fraud and, as a result, had waived the right to bring an action for damages based on that interest. We review a district court's conclusion of law to determine whether it is correct. Pacificorp v. Dep't of Revenue (1992), 254 Mont. 387, 397, 838 P.2d 914, 920.

Regarding the first basis for the District Court's conclusion, Robert Dew argues that although Sally Dew was not defrauded, she had not relinquished her right to transfer ownership interest in the property to Robert Dew. Therefore, when Sally Dew quitclaimed her interest in the property to Robert Dew, he obtained the right to recover one hundred percent of the property damages arising **from**

4

the fraud.  Robert Dew misunderstands our holding in Dew II.

Our decision in Dew II included the implied, if not direct, holding that this was an action for personal damages, not property damages, arising from Alice Dower's fraud.  We specifically stated that "[w]ithout deciding whether a single co-tenant may sue for tort damages for injury to the property itself and recover the entire amount, we hold that the court in this case erred in awarding damages for injury to the personal interests of persons who were not plaintiffs at the time of judgment." Dew II, 852 P.2d at 557 (emphasis added).

Sally Dew's fraud claims were the same as those brought by Robert Dew and were in the nature of a personal action.  See Dew II, 852 P.2d at 557.  On dismissal of Sally Dew's claims with prejudice, however, the District Court lost jurisdiction over her interest in the property.  Dew II, 852 P.2d at 557; citing Rule 41(a), M.R.Civ.P., and Miller v. Northern Pac. Ry. (1904), 30 Mont. 289, 296, 76 P. 691, 694. That dismissal had the same effect as if the District Court had rendered a judgment against Sally Dew on the merits of her fraud claim. See Higham v. City of Red Lodge (1991), 247 Mont. 400, 403, 807 P.2d 195, 197.  Accordingly, any interest that Sally Dew had for personal damages as a co-tenant ceased to exist at that point.

Furthermore, Sally Dew's lack of an interest in personal damages effectively prevents her from transferring such an interest to Robert Dew via quitclaim deeds.  It is axiomatic that a "quitclaim deed transfers and is designed to transfer only such

5

title and interest as the grantor had when [the grantor] delivered the title." Lodge v. Thorpe (1947), 120 Mont. 226, 229, 181 P.2d 598, 599-600. When Sally Dew quitclaimed her interest in the seven parcels to Robert Dew, she possessed a fifty percent ownership interest in the property, but no longer possessed any right to sue for personal damages arising from Alice Dower's fraud. We conclude that while Robert Dew succeeded to Sally Dew's fifty percent ownership interest in the tracts, he did not, and could not, succeed to her nonexistent right to sue for personal damages.

Robert Dew also asserts error in the District Court's alternative reason for denying him one hundred percent of the damages, namely, that he had acquired Sally Dew's interest in the property with the knowledge that it was tainted by fraud. Because of our resolution of Robert Dew's first asserted error, we need not address this argument.

Dew also argues that the District Court's determination that he is entitled to one-half of the damages arising from Alice Dower's fraud is inequitable. His argument is based on our decision in Dew II, wherein we stated that the District Court may act as a court of equity and authorize the setting-off of the purchase price of the individual land contracts in an amount equal to the damages sustained. Dew II, 852 P.2d at 588. Dew again misinterprets that case.

A review of Dew II clarifies that our discussion regarding the equity power of the District Court was confined solely to its ability to set-off the principal balances on the contracts for deed

6

against the damages Robert Dew sustained.  Indeed, we specifically stated that "[t]he power to allow a set-off of debts by a court of equity exists independent of statute where grounds for equitable interposition are shown, such as fraud or insolvency."  Dew II, 852 P.2d at 588.  Contrary to Robert Dew's assertion, this language-- limited as it is to the use of set-offs--does not invest the District Court with broad equitable power to award him one hundred percent of the personal damages attributable to Alice Dower's fraud when he is not entitled by law to such an award.  We hold, therefore, that the District Court did not err as a matter of law in concluding that Robert Dew is entitled to fifty percent of the damages arising from Alice Dower's fraud.

Dew's final argument regarding the District Court's judgment relates to the manner in which the District Court calculated his damages.  On remand following Dew II, the District Court set off the principal balances due on each contract for deed, including interest accrued from March 27, 1992, to the date of its order, by the $5,000 damage award and prejudgment interest from August 1, 1983 to the date of its order.  Dew argues that this calculation ignored the fact that judgment was entered on March 27, 1992, and that any recalculations should have been made as of that date. We agree.

In Dew II, we stated that "[t]he District Court acted within its equitable authority when it offset the principal amounts due under the contracts with the judgment in this case."  Dew II, 852 P.2d at 558 (emphasis added).  "The judgment in this case" refers

7

to the District Court's judgment entered on March 27, 1992, and clearly obligated the District Court to offset the damage award, complete with prejudgment interest, against the principal balances owing on the contracts on March 27, 1992.

Accordingly, the District Court should have calculated damages in the following manner. First, the District Court should have determined the principal balance due on each contract for deed as of March 27, 1992. Next, the District Court should have determined Robert Dew's damages as of March 27, 1992. According to the District Court's judgment of March 27, 1992, Robert Dew's damages would amount to one-half of the $10,000 damage per tract. Dew II, 852 P.2d at 555. The District Court would add to that per tract damage amount prejudgment simple interest at ten percent per annum for the period from August 1983--the time when Alice Dower's fraud became certain--to March 1992, for six of the contracts and from February 1984, to March 1992, for the remaining contract. Dew II, 852 P.2d at 557. The District Court would then set-off Robert Dew's damages for each tract against the principal balance owing on the corresponding contract as of March 27, 1992.

Finally, the Dowers request an award of costs and attorney's fees against Robert Dew as a sanction for bringing a frivolous appeal. "If [this Court] is satisfied from the record and the presentation of the appeal . . that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper." Rule 32, M.R.App.P. After reviewing the record and the

8

parties' arguments and given the necessity of the remand, we cannot conclude that Robert Dew's appeal was unreasonable. Therefore, we decline to award costs and attorney's fees on appeal to the Dowers.

Affirmed in part, reversed in part, and remanded to the District Court for recalculation of damages.

_____
                                                                Justice

We concur:

_____
                Chief Justice

_____

_____

_____

_____
                Justices

Justice Terry N. Trieweiler dissenting in part and specially concurring in part.

For the reasons set forth in my dissent to the majority's decision in *Dew v. Dower* (1993), **258** Mont. 114, 852 P.2d 549 (*Dew II*), I dissent from the majority's holding that Robert Dew was entitled to recover only one-half of the damages caused by defendants' fraudulent conduct.

However, I concur with that part of the majority opinion which reverses the District Court's application of the offset to which Robert Dew is entitled against the contract purchase price.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissenting and concurring opinion.

_____
Justice